**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

SANTA FE GOLDWORKS INC. AND
DAVID GRIEGO

      Plaintiffs,

v.                        No.

BELLA JEWELRY, LLC, d/b/a
BELLA FINE JEWELRY AND ART;
AMINI ENTERPRISE INC.;
AMINI BROTHERS, LLC, d/b/a
SFA ENTERPRISES;
FRANK AMINI; KEVIN KARIMI,
MANIC ENTERPRISES LLC, d/b/a
THE CATALOGUES,
and CINDY DENAPOLI.

      Defendants.

## COMPLAINT FOR INJUNCTION AND DAMAGES

     Plaintiffs Santa Fe Goldworks, Inc. and David Griego allege as follows for their Complaint against defendants.

## INTRODUCTION

1.   This action for copyright infringement arises from defendants' unauthorized copying, sale, and display of highly successful original jewelry designs created by plaintiffs David Griego and his company Santa Fe Goldworks, Inc. (Goldworks).

2.   One of Mr. Griego's and Goldworks' most highly regarded and successful jewelry designs is his River of Love® collection. This collection consists of rings and pendants with an original zigzag channel pattern inlaid with opal, turquoise, or other stones. An example is as follows:



3.      Variations of this design use different colored stone inlays and some have diamond borders or center stones. The various River of Love® designs are protected by eight federal copyright registrations and have become widely known and sought out examples of custom jewelry designed and made in Santa Fe.

4.      Defendants are primarily a group of companies owned and controlled by Frank Amini and his associate Kevin Karimi. They copy and sell others' jewelry designs. The Amini entities include Bella Jewelry, LLC, a jewelry store one block away from Goldworks that copies and sells the River of Love® jewelry designs. Mr. Amini, Mr. Karimi, and Bella have been repeatedly told to stop, and have long been informed that the River of Love® designs are protected by federal copyright law. When confronted, defendants initially stopped copying the River of Love® designs, only to continue to willfully copy, display, and sell knockoffs. Defendants sell these designs at great profit, since they did not have to go through the laborious creative process behind developing successful original jewelry designs.

5.      Defendant Cindy DeNapoli is the sole member of defendant Manic Enterprises LLC, dba *The Catalogues*—an online and print luxury magazine that advertises Southwestern jewelry. *The Catalogues* markets Bella Fine Jewelry and Art's copies of the River of Love® designs. Plaintiffs have demanded that it stop publishing infringing advertisements, but *The Catalogues* continues to willfully copy and publish unauthorized copies of the River of Love® designs to this day.

**PARTIES, VENUE, AND JURISDICTION**

6.      Plaintiff Goldworks is a New Mexico corporation founded and owned by Mr. Griego, with its principal place of business in the City of Santa Fe. Goldworks is located on the Santa Fe Plaza at 60 East San Francisco St., Suite 218, Santa Fe, New Mexico 87501.

7.     Plaintiff David Griego is a resident of the City of Santa Fe, New Mexico.

8.     Upon information and belief, defendant Bella Jewelry, LLC, dba Bella Fine Jewelry and Art (Bella) is a New Mexico corporation with its principal place of business in the City of Santa Fe. Bella is located on the Santa Fe Plaza at 50 East San Francisco St., Suite B, Santa Fe, New Mexico 87501. Bella was incorporated in 2010.

9.     Upon information and belief, defendant Frank Amini (Amini) is a resident of Arizona. He is the general manager and one of the owners of Bella, Amini Enterprise Inc., and Amini Brothers, LLC, dba SFA Enterprises.

10.    Upon information and belief, defendant Kevin Karimi is a resident of New Mexico. Mr. Karimi manages Bella in Santa Fe.

11.    Upon information and belief, defendant Amini Enterprise, Inc., is a New Mexico limited liability company with its principal place of business in the City of Santa Fe. Amini Enterprise, Inc., is also located on the Santa Fe Plaza at 50 East San Francisco, Santa Fe, New Mexico 87501. Upon information and belief, Amini Enterprise, Inc. is an alter ego of Bella.

12.    Upon information and belief, Amini Brothers, LLC, dba SFA Enterprises, is a New Mexico corporation with its principal place of business in the City of Santa Fe. Amini Brothers, LLC, is also located on the Santa Fe Plaza at 50 East San Francisco St., Santa Fe, New Mexico 87501. Amini Brothers, LLC., owns the building at 50 East San Francisco St., Santa Fe, New Mexico, 87501, where Bella and Amini Enterprise, Inc. operate.

13.    Defendants intentionally copy, sell, market, and display plaintiffs' original River of Love® designs.

3

14. Upon information and belief, Manic Enterprises LLC, dba *The Catalogues*, is an Arizona publishing company with its principal place of business at 11273 E Helm Drive, Scottsdale, AZ 85255.

15. Upon information and belief, defendant Cindy DeNapoli is a resident of Arizona. She is the sole member of defendant Manic Enterprises LLC and president of *The Catalogues*.

16. Ms. DeNapoli and Manic willfully sell, market, and display unauthorized photographic copies of plaintiffs' original River of Love® designs.

17. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arose under the Copyright Act of 1976, 17 U.S.C §§ 101 et seq.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all defendants are subject to personal jurisdiction in this district.

## GENERAL ALLEGATIONS

19. Plaintiff David Griego began designing and making jewelry at his kitchen table in Santa Fe in the early 1970s. With simple tools, as a young man in his early twenties, he began fashioning rings, pendants, and bracelets. He worked at night and sold his jewelry during the day. His craftsmanship was exceptional, and his designs immediately attracted attention and respect. Mr. Griego founded Santa Fe Goldworks, Inc. in 1972. In the decades since, Mr. Griego has become one of New Mexico's most sought-after jewelry designers. In 2015 Goldworks was voted by Santa Feans the best jewelry store in Santa Fe each year, an honor Goldwork has received each year since. Goldworks customers also come from other countries. In 2022 its customers included those from Canada, France, Switzerland, and Australia. Goldworks and its thirteen employees served three thousand customers in 2022.

20.     Mr. Griego's most well-known jewelry is his River of Love® collection, featuring the famous inlay zigzag channel in many variations. River of Love® sales account for one third of Goldworks' total sales. The rings and earrings are inlaid with opal or turquoise in various colors, and sometimes inset with diamonds, blending traditional and contemporary Santa Fe style. Each piece Goldworks sells is handmade by Santa Fe craftsmen to rigorous quality standards. The collection is a major part of Mr. Griego's life's work, and its popularity is the result of creativity and years of refinement, innovation, research, hard work, and advertising.

21.     Goldworks advertises the River of Love® jewelry collection regularly in citywide, statewide, and nationwide periodicals. These include *Inside Santa Fe*, *New Mexico Magazine*, *Texas Monthly*, and *Cowboys & Indians Magazine*, among others. *Texas Monthly* has a nationwide circulation of 2.5 million, and *Cowboys & Indians Magazine* reaches an average audience of close to three million each month. In 2022 alone, Goldworks invested nearly $200,000 in advertising, most of it including the River of Love® designs. Over the years, plaintiffs' marketing has reached countless millions of potential customers, generating substantial demand for both genuine and counterfeit River of Love® designs.

22.     Goldworks is located on Santa Fe's historic Plaza. After half a century of innovation and integrity, Mr. Griego has a reputation for originality, excellence, and customer satisfaction. Goldworks maintains a positive presence in Santa Fe and consistently sponsors community events such as Music on the Plaza and Zozobra.

**The River of Love® Collection is Protected by Copyright**

23.     The River of Love® jewelry designs have been protected by copyright since their original creation in 1989 and 1990. But Mr. Griego also registered his copyrights. The Copyright Act encourages prompt registration by providing the additional remedies of statutory damages and

attorneys' fees when a copyright is registered before infringement occurs. Plaintiffs' have obtained eight federal copyright registrations, covering what are collectively referred to herein as the "Protected Designs."

24. Mr. Griego secured his first copyright registration on December 18, 1998, long before defendants began copying and selling versions of the River of Love® designs. That 1998 registration, Vau000445670, covers the following three original ring designs created in 1990:




25. On September 8, 2009, Goldworks registered five additional copyrights for River of Love® design variations, as follows:

> (1) Small Opal River of Love Pendant with Pavè, U.S. Copyright Registration VA 1-703-737



(2)  Opal River of Love Ring with Flat Edge & Round Brilliant Diamond, U.S. Copyright Reg. VA 1-703-738.



(3)  Opal River of Love Ring with Pavè Round Brilliant Edge with Round Brilliant Diamond, U.S. Copyright Reg. VA 1-703-740.



(4)  Small Turquoise River of Love Pendant with Pavè, U.S. Copyright Reg. VA 1-703-746.



(5)  Turquoise River of Love Ring, U.S. Copyright Registration VA 1-703-749.



26.     In 2015 and 2016, Mr. Griego registered two more River of Love® design variations:



(6)     Opal River of Love Ring with Flared Pavè Edge, U.S. Copyright Reg. VA 1-961-506, January 13, 2015.



(7) Turquoise River of Love Earrings with Pavè Edge, U.S. Copyright Reg. VA 2-069-785, December 30, 2016.

27.     Neither Mr. Griego nor Goldworks has ever licensed any of their works to defendants or permitted copying by defendants.

**Defendant Amini Opens Bella Fine Jewelry and Art**

28.     Defendant Frank Amini opened Bella in 2010, less than one hundred feet from Mr. Griego's showroom on the Santa Fe Plaza. Rather than developing their own jewelry or selling standard non-copyrighted jewelry designs, defendants copied designers who had already proven themselves on the Santa Fe Plaza. Due to its location, Bella attracts Goldworks' customers, then sells them unauthorized copies of Goldworks' jewelry. Unlike Goldworks, Bella has not spent decades developing and advertising these iconic pieces.

29.     An example of one of Mr. Griego's original copyrighted rings is on the left. One of defendants' infringing copies is on the right:

 

Original Goldworks' copyrighted ring                    Defendants' copy

30.     Since opening Bella, defendants have had continuous and easy access to the River of Love® designs because defendants are on the same street less than one hundred feet away from Goldworks' showroom, plaintiffs' designs are prominently displayed in their showroom windows, and plaintiffs have extensively advertised the River of Love® collection in Santa Fe and around the country for decades.

31.     Mr. Griego first noticed counterfeit Goldworks' jewelry around Santa Fe within a year of defendants' opening Bella. Mr. Griego soon learned that Bella was selling rings and pendants that copied his River of Love® designs.

32.     In the fall of 2011, Mr. Griego notified defendants that they were infringing his Protected Designs. After sorting through Mr. Amini's web of corporate entities in Santa Fe, Mr. Griego sent a demand letter to Bella. On October 17, 2017, Mr. Griego's counsel wrote to Bella's registered agent, Mr. Robert Simon, informing defendants that Goldworks' designs were protected under several copyright registrations. The letter included images of the Protected Designs. Mr. Griego demanded that defendants stop all manufacture, sale, and use of the infringing pieces, and any other pieces substantially similar to plaintiffs' designs.

33.     Eventually Mr. Griego and Mr. Amini sat down together on a park bench on the Plaza outside the Goldworks showroom after Mr. Amini received the October 2011 demand letter. Mr. Amini said he would stop selling infringing jewelry. Mr. Griego took Mr. Amini at his word.

**The Copyright Infringement Continues**

34.     But Mr. Amini and his various associates and companies broke this agreement and refused to respect Mr. Griego's intellectual property. If they ever stopped, at some point defendants began again to intentionally copy, market, and sell copies of plaintiff's River of Love® designs. Their infringement was clearly willful at this point, although it likely was from the beginning.

35.     Mr. Griego discovered defendants' continuing infringement when he saw a magazine advertisement for Bella in *The Catalogues* that brazenly featured jewelry copying his designs. Further investigation revealed numerous pieces of jewelry sold by defendants in their stores on the Santa Fe Plaza, and on their website (www.bellafinejewelry.design) that are substantially similar to those in the River of Love® series. Defendants' infringing jewelry includes both rings and pendants copying plaintiffs' Protected Designs.

36.     Defendants continue to willfully infringe the same Protected Designs that plaintiffs referenced in their 2011 demand letter.

37.     Defendants have attempted to hide their infringement from Mr. Griego. When he has tried to confront defendants about their intellectual property theft and breaking their agreement to not copy his work, the staff at Bella have told Mr. Griego to leave the store.

38.     On March 31, 2023, Mr. Griego sent a second demand letter to defendants. The letter was personally delivered to defendant Karimi at the Bella store. Defendants did not respond to Mr. Griego's second demand letter. Plaintiffs called Bella on April 7, 2023. Mr. Karimi answered the phone and said Bella had made minute changes to Mr. Griego's designs so that what

10

they sold was different. When pressed that Bella's rings still used the obvious River of Love®

design, Mr. Karimi said it was the fault of the person who made the rings that Bella sells. Mr.

Karimi said Bella would engage lawyers to respond to the demand letter. Plaintiffs' counsel

contacted the last lawyers known to have represented defendants, and those lawyers promptly

denied representing defendants.

39.     Contrary to Mr. Karimi's assurances, plaintiffs never received a response from any

lawyer representing Bella. Further investigation revealed a variety of entities involved in Bella's

jewelry store on the plaza. Among these businesses is Amini Enterprise Inc., owned by Mr. Amini

and operating at the same location as Bella, also selling jewelry. Upon information and belief,

Amini Enterprise Inc. is Bella's alter ego.

40.     Neither Mr. Amini nor any agent of Bella or Amini Enterprise Inc. ever requested

or received permission to copy, license, market, or sell plaintiffs' Protected Designs.

41.     Defendants' continued reproduction, marketing, and sale of River of Love® copies

threatens everything Mr. Griego has accomplished over the past fifty years. Defendants'

continuous and intentional infringement has unfairly eroded Goldworks' reputation for high

quality, conveyed to the public that the River of Love® is not Mr. Griego's original design, and

robbed it of its legitimate market and reputation by selling inferior knockoffs.

42.     Without judicial intervention, defendants' willful infringement will continue.

**Manic Enterprises LLC Infringing Publications**

43.     Manic Enterprises LLC's luxury magazine—*The Catalogues*—features boutique

jewelry, art, and clothing businesses across the Southwest. It has repeatedly run the following

advertisement, publicly displaying Bella's infringing jewelry:



44.     On April 26, 2023, plaintiffs wrote to defendants DeNapoli and Manic Enterprises LLC, informing her that the River of Love® designs are protected by copyright and that the images in Bella's advertisement were infringing copies. Plaintiffs told DeNapoli and Manic Enterprises that because they may have been unaware that this advertisement was infringing, if they stopped future infringing publication plaintiffs would take the matter no further. Plaintiffs also put Ms. DeNapoli and Manic on notice that any further distribution of the advertisement would constitute willful infringement under the Copyright Act. *The Catalogues* went right on publishing infringing advertisements containing unauthorized photographic copies of the Protected Designs. Their infringement is willful. It is also highly damaging because it communicates to the purchasing public that the Protected Designs belong to Bella and are not the original work of plaintiffs.

45.     This action against all defendants is timely pursuant to the separate-accrual rule, under which "each infringing act starts a new statute of limitations period." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014).

**COUNT I**

**COPYRIGHT INFRINGEMENT**

***against Bella Jewelry, LLC, Amini Enterprise Inc., Frank Amini, Kevin Karimi, and Manic Enterprises LLC, dba The Catalogues***

46.     Plaintiffs incorporate by reference all of the foregoing allegations.

47.     Plaintiffs own registered copyrights in the Protected Designs.

48.     Defendants had abundant access to the River of Love® designs, which Mr. Griego has sold since 1990 in Santa Fe, New Mexico.

49.     Defendants copy, display, and distribute and sell to the public jewelry that is substantially similar to plaintiffs' Protected Designs.

50.     Defendants were never authorized to copy the Protected Designs.

51.     Defendants infringe plaintiffs' copyrights by reproducing substantial protected elements of the Protected Designs, both in actual jewelry and in images used for advertising the infringing jewelry, and displaying and distributing to the public this substantially similar jewelry.

52.     Defendants also infringe by creating derivative works based on plaintiff's Protected Designs, and displaying and distributing such works to the public.

53.     Defendants' infringement is ongoing and continuing.

54.     Defendants have realized unlawful profits from the unauthorized reproduction, preparation of derivative works, display, and distribution to the public of works copying plaintiffs' Protected Designs.

55.     Defendants' actions violate plaintiffs' exclusive rights under 17 U.S.C. § 106.

56.   Defendants have had actual knowledge of plaintiffs' copyrights in the Protected Designs since receiving Mr. Griego's October 17, 2011, demand letter. Defendants past and continuing infringement is willful.

57.   Defendant Manic Enterprises LLC infringes plaintiffs' copyrights by reproducing, displaying, and distributing to the public substantial elements of the Protected Designs in images used for advertising. Manic Enterprises LLC's infringement is willful since it has been on actual notice of Plaintiff's copyrights in the Protected Designs since April 26, 2023, or before.

58.   Each copied ring, pendant, or other derivative work, and each display of such work and distribution of such work to the public, as well as the threat of continuing infringement, constitutes a separate claim against defendants. Plaintiffs have sustained, and will continue to sustain, substantial damage from such infringement.

59.   Defendants' conduct creates a threat of continuing infringement, unless permanently enjoined by Order of this Court. Plaintiffs have no adequate remedy at law.

## COUNT II

## CONTRIBUTORY AND VICARIOUS
## COPYRIGHT INFRINGEMENT

### against Frank Amini, Kevin Karimi,
### Amini Enterprise Inc., Amini Brothers, LLC, and Cindy DeNapoli

60.   Plaintiffs incorporate by reference all of the foregoing allegations.

61.   Upon information and belief, defendants, and each of them, profited as a result of having knowingly induced or participated in the reproduction, display, and distribution of plaintiffs' Protected Designs.

62.   Upon information and belief, defendants are contributorily liable for the copyright infringement alleged herein because they had knowledge that plaintiffs' Protected Designs were being infringed, and materially contributed to the infringing activity by assisting in the

reproduction and preparation of derivative works based on of plaintiff's copyrighted designs, and the displaying and distributing of such infringing works to the public.

63.    Upon information and belief, Frank Amini contributes to the infringing activity by directing and controlling all the infringing activities of Bella and Amini Enterprise, Inc., and by providing the commercial space where defendants reproduce, create derivative works, display, and distribute unlawful copies of the Protected Designs.

64.    Upon information and belief, Kevin Karimi contributes to the infringing activity by supervising the infringing activity of Bella Fine Jewelry & Art at the Santa Fe Plaza.

65.    Upon information and belief Amini Enterprise, Inc., as Defendant Bella's alter ego, performs the same infringing activity Bella performs.

66.    Upon information and belief, defendants are vicariously liable for the copyright infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had and have a direct financial interest in it.

67.    Upon information and belief, Mr. Amini controls and supervises defendants' infringing conduct as the manager of Amini Enterprise Inc. and Bella. Mr. Amini has multiple obvious financial interests in defendants' continued distribution of unlawful copies of plaintiffs' copyrighted design as the owner of Bella, Amini Enterprise, Inc., and Amini Brothers, LLC.

68.    Upon information and belief, defendant Amini Brothers, LLC, dba SFA Enterprises, owns the commercial space on the Santa Fe Plaza used by other defendants display and distribute infringing jewelry. The financial benefit of this infringement flows back to Amini Brothers, LLC. As the manager of Amini Brothers LLC and Bella, Mr. Amini has the ability to supervise and restrict the unlawful conduct carried on in his buildings.

15

69.     Upon information and belief, defendant Cindy DeNapoli is President of *The Catalogues* and controls its publication. As the sole member of Manic Enterprises LLC, Ms. DeNapoli has a direct financial interest in the infringing advertisements that her company runs in *The Catalogues*.

70.     Due to defendants' acts of contributory and vicarious infringement, plaintiffs have suffered and will continue to suffer substantial damages to their business in an amount to be established at trial.

71.     Due to defendants' acts of contributory and vicarious infringement, defendants, and each of them, have obtained direct and indirect profits they would not have realized but for their infringement of plaintiffs' protected designs.

72.     Upon information and belief, defendants, and each of them, continue to profit from the reproduction, display, and distribution of substantially similar copies of plaintiffs' Protected Designs. Defendants' past and continuing copying of the Protected Designs constitutes willful, deliberate, and ongoing infringement of plaintiffs' copyrights, causing actual and continuing damage and irreparable harm to plaintiffs. Plaintiffs have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE plaintiffs pray for relief as follows:

A.     That defendants, their directors, officers, agents, representatives, subsidiaries, and affiliates and all persons acting by, through, or in concert with any of them, be permanently enjoined from:

1)  infringing or contributing to or participating in the infringement of plaintiffs' Protected Designs, or acting in concert with others to infringe plaintiffs' copyrighted designs in any way;

2)  copying, duplicating, creating derivative works from, selling, marketing, or distributing in any manner any Protected Design;

B.      That defendants be required to pay plaintiffs all damages sustained as a result of defendants' copyright infringement pursuant to 17 U.S.C. § 504;

C.      That defendants be required to account for and disgorge to plaintiffs all gains, profits, and advantages derived from their copyright infringement pursuant to17 U.S.C. § 504(b);

D.      That defendants be required to pay plaintiffs statutory damages, which should be increased due to defendants' willful infringement pursuant to 17 U.S.C. § 504(c);

E.      That defendants be required to pay plaintiffs' costs and reasonable attorneys' fees under 17 U.S.C. § 505;

F.      That plaintiffs be granted such other relief as is just and equitable.

## **JURY DEMAND**

Plaintiffs demand a jury trial of all issues triable to a jury in this matter.

Respectfully submitted,

BARDACKE ALLISON MILLER LLP

By: */s/ Benjamin Allison*
Benjamin Allison
Billy Trabaudo
P.O. Box 1808
141 E. Palace Avenue
Santa Fe, NM  87504-1808
505-995-8000
ben@bardackeallison.com
billy@bardackeallison.com

*Counsel for Plaintiffs Santa Fe Goldworks, Inc. and David Griego*

17

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing to be filed through the Court's CM/ECF system which caused all parties and counsel entitled to receive notice to be served electronically as more fully described on the Notice of Electronic Filing.

BARDACKE ALLISON LLP

By:     */s/ Benjamin Allison*
        Benjamin Allison