IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SANTA FE GOLDWORKS, INC.,
*et al.*,

    Plaintiffs,

v.                                                      Civ. No. 23-602 KK/JMR

BELLA JEWELRY, LLC, *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

In this copyright infringement action, Plaintiffs have filed a Motion for Leave to File First Amended Complaint (Doc. 34) ("Motion"), seeking to (1) add two new defendants and several new claims, (2) remove a current defendant, and (3) update the factual allegations in their Complaint. As explained below, Plaintiffs' Motion is not well-taken and is DENIED.[1]

## I. Background

In their Complaint for Injunction and Damages (Doc. 1) ("Complaint"), Plaintiffs Santa Fe Goldworks, Inc. ("Goldworks") and David Griego allege the following. Mr. Griego has been designing, making, and selling jewelry in Santa Fe since the early 1970s. (*Id.* at ¶ 19.) In 1972, he founded Goldworks, a company he continues to own and operate. (*Id.* at ¶¶ 6, 19.) "In the decades since, Mr. Griego has become one of New Mexico's most sought-after jewelry designers," and Goldworks has been repeatedly voted the best jewelry store in Santa Fe. (*Id.* at ¶ 19.)

---

[1] However, the Court's denial of the present Motion is without prejudice to Plaintiffs' ability to file an amended complaint, with Defendants' consent, that corrects or updates the factual allegations in the original complaint, or alternatively to file an opposed motion to amend the complaint to correct or update factual allegations, provided the opposed motion specifically identifies the allegations Plaintiffs seek to modify. In analyzing an opposed motion to amend, the Court will not conduct a line-by-line comparison of the original and proposed amended complaints to identify Plaintiffs' proposed changes. The Court's denial of the present Motion is also without prejudice to Plaintiffs' ability to remove Defendant Amini Enterprise, Inc. as a defendant, either by filing a motion to voluntarily dismiss this entity, or by omitting it from an unopposed or proposed amended complaint modifying their factual allegations.

Mr. Griego's best known jewelry is his River of Love ("RoL") collection of rings, earrings, and pendants, which feature "an original zigzag channel pattern inlaid with opal, turquoise, or other stones." (*Id.* at ¶¶ 2, 20.) Each RoL "piece Goldworks sells is handmade by Santa Fe craftsmen to rigorous quality standards." (*Id.* at ¶ 20.) The RoL collection accounts for one third of Goldworks' total sales, and "its popularity is the result of creativity and years of refinement, innovation, research, hard work, and advertising." (*Id.*) Eight registered copyrights—three owned by Mr. Griego and five by Goldworks—protect ten original RoL designs.[2] (*Id.* at ¶¶ 3, 23-26.)

Defendant Bella Jewelry, LLC ("Bella"), doing business as Bella Fine Jewelry and Art, sells jewelry on premises located less than 100 feet from Goldworks' Santa Fe showroom. (*Id.* at ¶¶ 8, 28.) Defendant Amini Enterprise, Inc.[3] ("Amini Enterprise") sells jewelry on the same premises as Bella. (*Id.* at ¶¶ 8, 11, 39.) Defendant Amini Brothers, LLC ("Amini Brothers"), doing business as SFA Enterprises, owns the premises. (*Id.* at ¶ 12.) Defendant Frank Amini is the general manager and one of the owners of Bella, Amini Enterprise, and Amini Brothers.[4] (*Id.* at ¶ 9.) Defendant Kevin Karimi manages Bella.[5] (*Id.* at ¶ 10.)

---

[2] The Complaint identifies each copyright registration by registration number and a photographic example of the design(s) it protects. (Doc. 1 at ¶¶ 23-26.) Mr. Griego registered his three copyrights in 1998, 2015, and 2016, while Goldworks registered the remaining five copyrights in 2009. (*Id.* at ¶¶ 24-26.)

[3] The Complaint refers to this entity as "Amini Enterprise, Inc.," but in their briefing on Plaintiffs' Motion, the parties refer to it as "Amini Enterprises, Inc." (*See generally* Docs. 1, 34-36.) This slight discrepancy may ultimately be immaterial because Plaintiffs omit the entity from their proposed First Amended Complaint (Doc. 34-1), and the Court's denial of the present Motion is without prejudice to Plaintiffs' ability to make that change. If, however, Plaintiffs decide that they do wish to maintain their claims against this Defendant, they should confirm and use its correct legal name. Meanwhile, for purposes of the present Motion, the Court will use the name given in the Complaint.

[4] These facts lead Plaintiffs to believe that Amini Enterprise is Bella's alter ego. (Doc. 1 at ¶¶ 11, 39.)

[5] In this Memorandum Opinion and Order, the Court refers to Bella, Amini Enterprise, Amini Brothers, Mr. Amini, and Mr. Karimi collectively as "Bella Defendants."

Within a year of Bella's opening in 2010, Mr. Griego learned that Bella was selling rings and pendants that copied Plaintiffs' RoL designs.[6] (*Id.* at ¶¶ 28, 31.) In the fall of 2011, Mr. Griego's counsel sent Bella's registered agent a demand letter that included images of Plaintiffs' designs, informed Bella Defendants that the depicted designs were protected by copyright, and demanded that they cease to manufacture and sell jewelry using the designs.[7] (*Id.* at ¶ 32.) Mr. Amini eventually met with Mr. Griego in person and told Mr. Griego that he would stop selling infringing jewelry. (*Id.* at ¶ 33.) However, Mr. Griego subsequently "discovered [D]efendants' continuous infringement when he saw a magazine advertisement for Bella in *The Catalogues* that … featured jewelry copying his designs." (*Id.* at ¶¶ 34-35.) *The Catalogues* is a "luxury magazine" that "features boutique jewelry, art, and clothing businesses across the Southwest," published by Defendant Manic Enterprises, LLC ("Manic"), of which Defendant Cindy DeNapoli is the sole member. (*Id.* at ¶¶ 5, 14-15, 43.)

Through further investigation, Plaintiffs learned that Bella Defendants have continued to sell jewelry that is "substantially similar" to the RoL protected designs in their Santa Fe jewelry store and on their website. (*Id.* at ¶¶ 35-36.) Bella Defendants have tried to hide their infringing activity from Mr. Griego, and when he has tried to confront them about it, Bella staff have told him to leave the store. (*Id.* at ¶ 37.) Thus, in March 2023, Mr. Griego sent a second demand letter to Bella Defendants that was personally delivered to Mr. Karimi at the Bella store. (*Id.* at ¶ 38.)

---

[6] The Complaint includes a side-by-side photo comparison of one of Goldworks' copyrighted designs and one of Bella Defendants' allegedly infringing works. (Doc. 1 at ¶ 29.) The Goldworks ring depicted in the photo comparison appears to be the one protected by the registration numbered VA 1-703-738. (*Compare id.* at ¶ 25(2) *with id.* at ¶ 29.)

[7] The Complaint generally indicates that this letter was sent in 2011, but in one instance states that it was sent in 2017. (*Compare* Doc. 1 at ¶ 32 *with id.* at ¶¶ 33, 36, 56.) In their response (Doc. 30) to Bella Defendants' motion to dismiss (Doc. 20), Plaintiffs clarify that the letter was in fact sent in 2011 and that the reference to 2017 is a typographical error. (Doc. 30 at 8 n.1.) Plaintiffs corrected this error in their proposed First Amended Complaint, and the Court's denial of the present Motion is without prejudice to their ability to make that correction. (Doc. 34-1 at ¶ 36.)

Defendants did not respond to the letter and when Mr. Griego contacted Mr. Karimi about it by phone, Mr. Karimi told him that "Bella had made minute changes to [his] designs so that what they sold was different." (*Id.*) Mr. Karimi also told Mr. Griego that "it was the fault of the person who made the rings that Bella sells." (*Id.*)

Plaintiffs have never licensed or otherwise permitted Defendants to copy any of their works. (*Id.* at ¶ 27.) Yet Bella Defendants have continued to reproduce, market, and sell copies of RoL protected designs. (*Id.* at ¶¶ 34, 36, 41, 53.) Bella Defendants "have had continuous and easy access" to the RoL designs because of their close proximity to Goldworks' showroom and because Plaintiffs have advertised the collection extensively in local, regional, and national publications. (*Id.* at ¶¶ 21, 30.)

Manic, in turn, has "repeatedly" run an advertisement in *The Catalogues* that displays "Bella's infringing jewelry."[8] (*Id.* at ¶ 43.) In April 2023, Plaintiffs notified Manic that any further distribution of the advertisement would constitute willful copyright infringement. (*Id.* at ¶ 44.) Nevertheless, Manic has continued to publish the advertisement. (*Id.*)

Plaintiffs filed this action on July 17, 2023, alleging that all Defendants except Amini Brothers and Ms. DeNapoli have ongoingly violated Plaintiffs' exclusive rights under 17 U.S.C. § 106. (*Id.* at 1, 13-14.) These rights include the rights to reproduce, display, and distribute jewelry using the RoL designs protected by copyright and to create, display, and distribute derivative works based on those designs. (*Id.*) According to the Complaint, "[e]ach copied ring, pendant, or other derivative work, and each display of such work and distribution of such work to the public, as well as the threat of continuing infringement, constitutes a separate claim against [D]efendants." (*Id.* at ¶ 58.)

---

[8] The Complaint includes a photograph of the referenced advertisement. (Doc. 1 at ¶ 43.)

Plaintiffs also allege that all Defendants except Bella and Manic are liable for vicarious and contributory copyright infringement. (*Id.* at 14-16.) In support of their claims of contributory and vicarious infringement against Mr. Amini, Mr. Karimi, Amini Enterprise, and Amini Brothers, Plaintiffs allege that: (1) as an owner and manager of Bella, Amini Enterprise, and Amini Brothers, Mr. Amini directs and controls Bella's and Amini Enterprise's infringing activity, provides commercial space for the activity through Amini Brothers, and has a financial interest in continuing the activity, (*id.* at ¶¶ 63, 67, 68); (2) Mr. Karimi supervises Bella's infringing activity, (*id.* at ¶ 64); (3) as Bella's alter ego, Amini Enterprise engages in the same infringing activity as Bella, (*id.* at ¶ 65); and, (4) Amini Brothers provides commercial space for the infringing activity with a financial benefit that flows back to that entity. (*Id.* at ¶ 68.) Based on their direct, vicarious, and contributory copyright infringement claims, Plaintiffs seek injunctive relief, disgorgement of profits, damages, and attorney fees and costs against all Defendants. (*Id.* at 16-17.)

On September 22, 2023, Bella Defendants filed a Motion to Dismiss or, in the Alternative, Motion for More Definite Statement. (Doc. 20.) This motion was fully briefed by October 20, 2023. (Docs. 30, 31.)

Then, on January 22, 2024, Plaintiffs filed the Motion presently before the Court, seeking leave to amend their Complaint to: (1) add two new defendants; (2) add several new claims against the new defendants; (3) remove Amini Enterprise as a defendant; and, (4) "update the allegations" in the Complaint "with additional facts." (Doc. 34 at 2.) Bella Defendants responded in opposition to Plaintiffs' Motion on February 5, 2024, and Plaintiffs replied in support of it on February 20, 2024. (Docs. 35, 36.)

Plaintiffs attach their proposed First Amended Complaint for Injunction and Damages ("proposed FAC") to their Motion, as required by local rule. (Doc. 34-1); D.N.M.LR-Civ. 15.1.

Among other changes to the original Complaint, Plaintiffs propose to add Turquoise Trails, LLC, doing business as Turquoise Trail Jewelry ("Turquoise Trails") and its owner and operator, Ahmad Shawabkeh, as defendants, and to sue them not only for direct, contributory, and vicarious copyright infringement, but also for unfair competition, false designation of origin, and federal and common law trademark infringement. (Doc. 34-1.) In support, Plaintiffs propose to add factual allegations to the effect that Turquoise Trails and Mr. Shawabkeh operate a jewelry store close to Goldworks' Santa Fe showroom, and that they have, on unspecified dates and without Plaintiffs' license or permission, marketed and sold infringing copies of Plaintiffs' copyrighted RoL designs using Goldworks' registered trademark "River of Love." (*Id.* at ¶¶ 12-14, 29, 44.)

## II. Analysis

*A.    Legal Standards*

Federal Rule of Civil Procedure 15 provides that, absent circumstances not applicable here, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[9] Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend is within the trial court's discretion. *Bradley v. Val-Mejias*, 379 F.3d 892, 900-01 (10th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "The court should freely give leave when justice so requires," and should be mindful that Rule 15 is intended to provide litigants with "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." Fed. R. Civ. P. 15(a)(2); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Nevertheless, courts may deny leave to amend on "a showing of undue delay, undue prejudice to the opposing party,

---

[9] A party may amend its pleading "once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Here, Bella Defendants filed a motion to dismiss or for a more definite statement under Rule 12(b)(6) and (e) on September 22, 2023. (Doc. 20.) Thus, the deadline for Plaintiffs to amend their Complaint as a matter of course expired well before they filed the present Motion on January 22, 2024. (Doc. 34.)

bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver,* 397 F.3d 1300, 1315 (10th Cir. 2005).

The "most important[] factor in deciding a motion to amend the pleadings[] is whether the amendment would prejudice the nonmoving party." *Minter*, 451 F.3d at 1207.

> Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment. Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues.

*Id.* at 1208 (citation and quotation marks omitted).

Proposed amendments adding parties may also require consideration of Federal Rule of Civil Procedure 20, which governs permissive joinder.[10] *State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984). When a proposed joinder is found to be inappropriate under Rule 20, courts may deny leave to amend. *See id.* at 416-17; *Trail Realty, Inc. v. Beckett*, 462 F.2d 396, 399–400 (10th Cir. 1972).

Rule 20 provides that persons or entities

> may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Thus, to assess the propriety of a motion seeking leave to permissively join a new defendant, courts must, among other things, determine whether the plaintiff's claims against the new and existing defendants concern or arise out of the same transaction, occurrence, or series of transactions or occurrences. *State Distributors, Inc.*, 738 F.2d at 416.

---

[10] None of Plaintiffs' arguments suggest that the defendants they seek to add are persons *required* to be joined if feasible under Federal Rule of Civil Procedure 19. (*See generally* Docs. 34, 36.) Thus, the Court will not address Rule 19 here.

7

In determining whether claims against the new and existing defendants concern or arise out of the same transaction, occurrence, or series of transactions or occurrences, other district courts in the Tenth Circuit have asked whether the events giving rise to the respective claims are "logically related." *See, e.g., Noecker v. Escobedo*, 593 F. Supp. 3d 1103, 1108 (W.D. Okla. 2020); *Patrick Collins, Inc. v. John Does 1-15*, 2012 WL 415436, at *3 (D. Colo. Feb. 8, 2012); *Jacobs v. Watson Pharms., Inc.*, 2011 WL 2216257, at *2 (N.D. Okla. June 7, 2011); *see also In re Chipotle Mexican Grill, Inc.*, 2017 WL 4054144, at *3 (10th Cir. Mar. 27, 2017) ("[A]ll logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence[.]"). Another way of phrasing this inquiry is whether there is a "transactional link" between the defendants. *See Priv. Lenders Grp., Inc. v. Does 1-17*, 294 F.R.D. 513, 515–16 (E.D. Mo. 2013). Notably, "[a] transactional link is missing when the defendants' acts, though identical, were separate and independent." *Id.* at 516 (quotation marks omitted).

Rule 20 is inherently flexible, and courts generally use "[a] case by case approach" in applying the rule. *In re Chipotle Mexican Grill*, 2017 WL 4054144, at *3; *see also Jacobs*, 2011 WL 2216257, at *2 ("[I]nstead of developing one generalized test for ascertaining whether a particular factual situation constitutes a single transaction or occurrence [or series of transactions or occurrences] for purposes of Rule 20, the courts seem to have adopted a case-by-case approach."). Moreover, the decision whether to permit joinder under Rule 20 is within the trial court's discretion*, Hefley v. Textron, Inc.*, 713 F.2d 1487, 1499 (10th Cir. 1983); *Franklin v. Shelton*, 250 F.2d 92, 95 (10th Cir. 1957), and thus, even when Rule 20's requirements are met, courts consider other pertinent factors in deciding whether to permit or deny joinder. These factors

include whether joinder would promote judicial efficiency or cause unfair prejudice.[11] *McPhail v. Deere & Co.*, 529 F.3d 947, 952 (10th Cir. 2008); *Bicycle Peddler, LLC v. John Does 1-177*, 2013 WL 1103473, at *3-*4 (D. Colo. Mar. 15, 2013); *Jacobs*, 2011 WL 2216257, at *4.

B.     *The proposed FAC does not satisfy Rule 20's requirements for permissive joinder.*

As noted above, in their Motion, Plaintiffs seek leave to add Turquoise Trails and Mr. Shawabkeh as defendants, and to sue them not only for direct, contributory, and vicarious copyright infringement, but also for unfair competition, false designation of origin, and federal and common law trademark infringement. Notably, however, there is no allegation in the proposed FAC that Turquoise Trails or Mr. Shawabkeh has ever acted in concert with any of the existing Defendants in this case, or indeed that Turquoise Trails or Mr. Shawabkeh has any connection at all with any existing Defendant. (*See generally* Doc. 34-1.) Nor are there any allegations that Turquoise Trails or Mr. Shawabkeh has reproduced, marketed, or sold any of the same copies or derivative works that Defendants have reproduced, marketed, or sold. (*Id.*) On the contrary, the proposed FAC includes photographic examples of the alleged infringing works at issue, and the examples attributed to Bella Defendants are different from the examples attributed to Turquoise Trails and Mr. Shawabkeh. (*Compare id.* at ¶ 33 *with id.* at ¶ 44.)

In these circumstances, Plaintiffs have failed to satisfy Rule 20's requirements for permissive joinder of the defendants they propose to add. There is no logical relationship between Plaintiffs' existing claims against Defendants and their proposed claims against Turquoise Trails and Mr. Shawabkeh, and no transactional link between the existing Defendants and the proposed

---

[11] In addressing the somewhat analogous circumstance of a federal trial court's discretionary exercise of supplemental jurisdiction over state law claims, the United States Supreme Court noted that, "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("*Gibbs*"). However, the *Gibbs* Court also noted that "considerations of judicial economy, convenience and fairness to litigants" should inform the exercise of judicial discretion. *Id.* at 726.

new ones. Rather, as alleged in the proposed FAC, the wrongful acts of the proposed new defendants are wholly separate from and independent of the existing Defendants' wrongful acts.[12] In other words, in the proposed FAC, Plaintiffs have failed to assert claims against an existing Defendant on the one hand, and Turquoise Trails or Mr. Shawabkeh on the other, that concern or arise out of the same transaction, occurrence, or series of transactions or occurrences, as Rule 20 requires. Fed. R. Civ. P. 20(a)(2)(A). The Court will therefore deny Plaintiffs' request for leave to amend to add Turquoise Trails and Mr. Shawabkeh as defendants. *State Distributors, Inc.*, 738 F.2d at 416-17; *Trail Realty, Inc.*, 462 F.2d at 399–400.

C.   *Granting leave to amend would impede judicial efficiency and unduly prejudice Defendants.*

In addition, granting Plaintiffs leave to amend would be inappropriate because the proposed amendment would impede judicial efficiency and unfairly prejudice Defendants. Joinder generally serves judicial efficiency when "the overwhelming amount of evidence will be identical in both cases." *Jacobs*, 2011 WL 2216257, at *4. However, there is "little, if any, judicial economy in allowing … claims to proceed together" when the bulk of the evidence relevant to the claims is likely to differ due to their "fact-intensive nature." *Bicycle Peddler, LLC*, 2013 WL 1103473, at *4. Likewise, if the bulk of the evidence is likely to differ, joinder is likely to unfairly prejudice the defendants.

Here, while some of the evidence relevant to Plaintiffs' proposed and existing claims would be the same, the bulk of the evidence relevant to the claims against Turquoise Trails and Mr. Shawabkeh would be completely different from the evidence relevant to the claims against the

---

[12] To illustrate the lack of a logical relationship or transactional link by way of a simple analogy, it is as though two unrelated drivers negligently crashed into Plaintiffs' vehicle on two separate occasions and in two different locations. Though both hypothetical accidents would involve Plaintiffs, their vehicle, and negligence, there would plainly be no logical relationship between the accidents and no transactional link between the drivers.

existing Defendants. It is true that proof of Plaintiffs' registration of their RoL copyrights, and evidence regarding the originality of their designs, would likely be the same in both cases. (*See* Doc. 34-1 at ¶¶ 2, 20-21, 24-27, 34.) And there would likely be some overlap in the evidence regarding the respective defendants' access to the designs. (*Id.* at ¶¶ 5, 7, 12, 14, 34.)

However, the divergent evidence relevant to the two sets of defendants is likely to heavily outweigh the overlapping evidence. Issues that would likely require the discovery and presentation of divergent evidence include: (1) whether each alleged copy and derivative work reproduced, marketed, and distributed by each defendant is substantially similar to protected elements of a copyrighted design, (*id.* at ¶¶ 54, 56-57, 63); (2) whether and to what extent each defendant had access to each protected design it allegedly copied, (*id.* at ¶ 53); (3) the time frame for each defendant's reproduction, marketing, and distribution of each alleged copy and derivative work, (*id.* at ¶ 58); (4) the manner in which each alleged copy and derivative work by each defendant was created, advertised, and distributed, (*id.* at ¶¶ 54, 56-57); (5) whether each defendant's alleged infringing activity was willful, (*id.* at ¶ 61); (6) what damages Plaintiffs have incurred due to each infringement by each defendant, and what profits each defendant has earned from each infringement, (*id.* at ¶ 63; *id.* at 22); and, (7) each entity defendant's business structure and whether each defendant is directly, vicariously, and/or contributorily liable for infringing activity, (*id.* at 14-19).[13] In addition, all of the evidence regarding Plaintiffs' claims against Turquoise Trails and Mr. Shawabkeh for unfair competition, false designation of origin, and statutory and common law

---

[13] According to Plaintiffs, "[e]ach copied ring, pendant, or other derivative work, and each display of such work and distribution of such work to the public, as well as the threat of continuing infringement, constitutes a separate claim against defendants." (Doc. 1 at ¶ 58; Doc. 34-1 at ¶ 63.) The record does not reflect exactly how many infringing pieces of jewelry Bella Defendants, Turquoise Trails, and Mr. Shawabkeh have allegedly produced, marketed, and distributed to date. But the numbers are potentially quite high in light of Plaintiffs' allegations that Bella Defendants have been engaging in infringing activity since 2011, as well as the absence of any allegations regarding how long Turquoise Trails and Mr. Shawabkeh have been doing so. (Doc. 34-1 at ¶¶ 32, 35, 40.)

trademark infringement would be distinct because Plaintiffs have asserted no such claims against Defendants. (*Compare* Doc. 1 *with* Doc. 34-1 at 19-22.) Given the likely predominance of divergent evidence, joinder would save the Court and the parties little time, and at the heavy cost of making discovery, motions practice, and trial unwieldy, potentially confusing the issues and the jury, and unduly prejudicing Defendants by requiring them to participate in litigation having nothing to do with them.

In contrast, Plaintiffs are unlikely to suffer any undue prejudice by being required to pursue their claims against Turquoise Trails and Mr. Shawabkeh in a separate action, if they choose to do so. Nothing in this Order prevents Plaintiffs from filing such an action, and if, as Plaintiffs claim, they did not discover Turquoise Trails' and Mr. Shawabkeh's ongoing infringing activity until after they filed this case in July 2023, (Doc. 34-1 at ¶ 44), the Court's denial of the present Motion is unlikely to have a significant impact on the timeliness of the new case. *See Diversey v. Schmidly*, 738 F.3d 1196, 1201-02 (10th Cir. 2013) (holding that three-year limitation period for copyright infringement claims begins to run when "the plaintiff knows or has reason to know of the infringement," with claims for distinct infringements accruing separately). Of course, Plaintiffs will have to pay a separate filing fee. But "payment of a separate filing fee for [their] claims against each [set of] Defendant[s]" will do nothing more than "properly balance[] Plaintiff[s'] right to protect [their] copyright[s] with the Court's interest in cost-efficient adjudication of cases." *Bicycle Peddler, LLC*, 2013 WL 1103473, at *4. In sum, even if the joinder Plaintiffs propose had satisfied Rule 20's requirements, the Court would, in its discretion, reject the joinder because it would impede judicial efficiency and unduly prejudice Defendants.[14]

---

[14] Because the Court denies Plaintiffs' Motion for the reasons set forth herein, it does not address the arguments in Bella Defendants' response. (*See generally* Doc. 35.) However, the Court notes that these arguments are the same as or similar to the ones raised in Bella Defendants' Motion to Dismiss or, in the Alternative, Motion for More Definite

### III. Conclusion

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Leave to File First Amended Complaint (Doc. 34) is DENIED.

IT IS SO ORDERED.

*[signature: Kirtan Khalsa]*

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent

---

Statement (Doc. 20), which the Court has denied in a separate Memorandum Opinion and Order filed contemporaneously herewith.