## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SANTA FE GOLDWORKS INC. and
DAVID GRIEGO,

      Plaintiffs,

v.                                                                                          Civ. No. 23-602-KK/JMR

BELLA JEWELRY, LLC;
AMINI ENTERPRISE INC.;
AMINI BROTHERS, LLC;
FRANK AMINI; KEVIN KARIMI;
MANIC ENTERPRISES, LLC;
and CINDY DENAPOLI,

      Defendants,

and

MANIC ENTERPRISES, LLC;
CINDY DENAPOLI;
BELLA JEWELRY, LLC;
FRANK AMINI; and KEVIN KARIMI,

      Counterclaimants,

v.

SANTA FE GOLDWORKS INC. and
DAVID GRIEGO,

      Counter Defendants.

## FIRST AMENDED COMPLAINT
## FOR INJUNCTION AND DAMAGES

      Plaintiffs Santa Fe Goldworks, Inc. and David Griego allege as follows for their First Amended Complaint against defendants.

**INTRODUCTION**

1. This action for copyright infringement arises from defendants' unauthorized copying, display, and sale of highly successful original jewelry designs created by plaintiffs David Griego and his company Santa Fe Goldworks, Inc. (Goldworks).

2. Mr. Griego's and Goldworks' most successful jewelry creation is his RIVER OF LOVE® collection. This collection consists of rings and pendants with an original zigzag channel design inlaid with opal, turquoise, or other stones. An example is on the right: 

3. Variations of this design use different colored stone inlays, and some have diamond borders or center stones. These original jewelry designs are protected by eight federal copyright registrations and have become widely sought out examples of custom jewelry designed and made in Santa Fe.

4. Defendants are two company groups that copy plaintiffs' designs for profit. One is a retailer infringing by selling copies of protected designs, the other is an advertiser who has been repeatedly warned to stop publishing infringing copies.

**PARTIES, VENUE, AND JURISDICTION**

5. Plaintiff Goldworks is a New Mexico corporation founded and owned by Mr. Griego, with its principal place of business in the City of Santa Fe. Goldworks is located on the Santa Fe Plaza at 60 East San Francisco St., Suite 218, Santa Fe, New Mexico 87501.

6. Plaintiff David Griego is a resident of the City of Santa Fe, New Mexico.

7. Upon information and belief, defendant Bella Jewelry, LLC, dba Bella Fine Jewelry and Art (Bella) is a New Mexico corporation with its principal place of business in the City of

Santa Fe. Bella is located on the Santa Fe Plaza at 50 East San Francisco St., Suite B, Santa Fe, New Mexico 87501. Bella was incorporated in 2010.

8.    Upon information and belief, defendant Frank Amini is a resident of Arizona. He is the general manager and one of the owners of Bella, Amini Enterprise Inc., and Amini Brothers, LLC.

9.    Upon information and belief, defendant Kevin Karimi is a resident of New Mexico. Mr. Karimi manages Bella in Santa Fe.

10.    Upon information and belief, defendant Amini Enterprise, Inc., is a New Mexico limited liability company with its principal place of business in the City of Santa Fe. Amini Enterprise, Inc., is also located on the Santa Fe Plaza at 50 East San Francisco, Santa Fe, New Mexico 87501. Upon information and belief, Amini Enterprise, Inc. is an alter ego of Bella.

11.    Upon information and belief, Amini Brothers, LLC, is a New Mexico corporation with its principal place of business in the City of Santa Fe. Amini Brothers, LLC, is also located on the Santa Fe Plaza at 50 East San Francisco St., Santa Fe, New Mexico 87501. Amini Brothers, LLC, owns the building at 50 East San Francisco St., Santa Fe, New Mexico where Bella and Amini Enterprise, Inc. operate.

12.    Amini Brothers, LLC, Kevin Karimi, Frank Amini, and Bella (collectively the "Bella Defendants") have been repeatedly told to stop and have long been informed that the RIVER OF LOVE® designs are protected by federal copyright law. When confronted, the Bella Defendants initially stopped copying the River of Love® designs, only to continue to willfully copy, display, and sell knockoffs. The Bella Defendants sell these designs at great profit since they did not have to go through the laborious creative process behind developing successful original jewelry designs.

13. Upon information and belief, Manic Enterprises LLC, dba *The Catalogues* is an Arizona publishing company with its principal place of business at 11273 E Helm Drive, Scottsdale, AZ 85255. *The Catalogues* is an online and print luxury magazine that advertises Southwestern jewelry.

14. Upon information and belief, defendant Cindy DeNapoli is a resident of Arizona. She is the president and sole member of defendant Manic Enterprises LLC.

15. Ms. DeNapoli and Manic willfully sell, market, and display unauthorized photographic copies of plaintiffs' copyrighted designs. *The Catalogues* markets Bella's infringing copies of the RIVER OF LOVE® designs. Plaintiffs have demanded that it stop publishing infringing advertisements, but *The Catalogues* has continued to willfully copy and publish unauthorized copies for profit.

16. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the Copyright Act of 1976, 17 U.S.C §§ 101 et seq., and the Lanham Act, 15 U.S.C. §1114 and § 1125(a).

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all defendants are subject to personal jurisdiction in this district.

## **GENERAL ALLEGATIONS**

18. Plaintiff David Griego began designing and making jewelry at his kitchen table in Santa Fe in the early 1970s. With simple tools, as a young man in his early twenties, he began fashioning rings, pendants, and bracelets. He worked at night and sold his jewelry during the day. His craftsmanship was exceptional, and his designs immediately attracted attention and respect. Mr. Griego founded Santa Fe Goldworks, Inc. in 1972. In the decades since, Mr. Griego has become one of New Mexico's most sought-after jewelry designers. In 2015 Goldworks was voted

by Santa Feans the best jewelry store in Santa Fe, an honor Goldwork has received each year since. Goldworks customers also come from other countries. In 2022 its customers included those from Canada, France, Switzerland, and Australia. Goldworks and its thirteen employees served three thousand customers in 2022.

19. Mr. Griego created his RIVER OF LOVE® design, with inlay zigzag channel in 1989. The rings and earrings are inlaid with opal or turquoise in various colors, and sometimes inset with diamonds, blending traditional and contemporary Santa Fe style. Each piece Goldworks sells is handmade by Santa Fe craftsmen to rigorous quality standards. The collection is a major part of Mr. Griego's life's work, and its popularity is the result of creativity and years of refinement, innovation, research, hard work, and advertising. Sales of the RIVER OF LOVE® jewelry collection accounts for approximately one third of Goldworks' total sales.

20. Goldworks advertises the RIVER OF LOVE® jewelry collection regularly in citywide, statewide, and nationwide periodicals. These include *Inside Santa Fe*, *New Mexico Magazine*, *Texas Monthly*, and *Cowboys & Indians Magazine*, among others. *Texas Monthly* has a nationwide circulation of 2.5 million, and *Cowboys & Indians Magazine* reaches an average audience of close to three million each month. In 2022 alone, Goldworks invested nearly $200,000 in advertising, most of it including the RIVER OF LOVE® designs. Over the years, plaintiffs' marketing has reached countless millions of potential customers, generating substantial demand for both genuine and counterfeit RIVER OF LOVE® designs.

21. Goldworks is located on Santa Fe's historic Plaza. After half a century of innovation and integrity, Mr. Griego has a reputation for originality, excellence, and customer satisfaction. Goldworks maintains a positive presence in Santa Fe and consistently sponsors community events such as Music on the Plaza and Zozobra.

**The RIVER OF LOVE® Collection is Protected by Copyright**

22.  The RIVER OF LOVE® jewelry designs have been protected by copyright since their original creation in 1989 and 1990. Mr. Griego registered his copyrights before the infringement began. The Copyright Act encourages prompt registration by providing additional remedies in the form of statutory damages and attorneys' fees when a copyright is registered before infringement occurs. Plaintiffs' have obtained eight federal copyright registrations, covering what are collectively referred to herein as the "Protected Designs."

23.  Mr. Griego secured his first copyright registration on December 18, 1998, long before defendants began copying and selling versions of the RIVER OF LOVE® designs. That 1998 registration, Vau000445670, attached as **Exhibit 1**, covers the following three original ring designs created in 1990:

 

24.  On September 8, 2009, Goldworks registered five additional copyrights for RIVER OF LOVE® design variations, as follows:

(1) Small Opal River of Love Pendant with Pavè, U.S. Copyright Registration VA 1-703-737, attached as **Exhibit 2**.



(2) Opal River of Love Ring with Flat Edge & Round Brilliant Diamond, U.S. Copyright Reg. VA 1-703-738, attached as **Exhibit 3**.



(3) Opal River of Love Ring with Pavè Round Brilliant Edge with Round Brilliant Diamond, U.S. Copyright Reg. VA 1-703-740, attached as **Exhibit 4**.



(4) Small Turquoise River of Love Pendant with Pavè, U.S. Copyright Reg. VA 1-703-746, attached as **Exhibit 5**.



7

(5) Turquoise River of Love Ring, U.S. Copyright Registration VA 1-703-749, attached as **Exhibit 6**.



25. In 2015 and 2016, Mr. Griego registered two more River of Love® design variations:

(6) Opal River of Love Ring with Flared Pavè Edge, U.S. Copyright Reg. VA 1-961-506, January 13, 2015, attached as **Exhibit 7**.



(7) Turquoise River of Love Earrings with Pavè Edge, U.S. Copyright Reg. VA 2-069-785, December 30, 2016, attached as **Exhibit 8**.



26. Neither Mr. Griego nor Goldworks has ever licensed any of their works to defendants or permitted copying by defendants.

**Copyright Infringement by Bella Fine Jewelry and Art**

27. Defendant Frank Amini opened Bella in 2010, less than one hundred feet from Mr. Griego's showroom on the Santa Fe Plaza. Rather than developing their own designs or selling public domain jewelry designs, the Bella defendants copied designers who had already proven

8

themselves on the Santa Fe Plaza. Bella's location attracts Goldworks' customers, and Bella sells them unauthorized copies of Goldworks' jewelry. Unlike Goldworks, Bella has not spent decades creating, developing, and advertising these pieces.

28. An example of one of Mr. Griego's original copyrighted rings is below. Examples of defendants' infringing copies follow:

Original Goldworks copyrighted ring:



Bella's infringing copies:





29. Since opening Bella, defendants have had continuous and easy access to the RIVER OF LOVE® designs. The Bella defendants are on the same street less than one hundred feet away from Goldworks' showroom, plaintiffs' designs are prominently displayed in their showroom windows, and plaintiffs have for decades advertised the RIVER OF LOVE® collection in Santa Fe and around the country.

30. Mr. Griego first noticed counterfeit Goldworks' jewelry around Santa Fe within a year of defendants' opening Bella. Mr. Griego soon learned that Bella was selling rings and pendants that copied his River of Love® designs.

31. In the fall of 2011, Mr. Griego notified defendants that they were infringing his Protected Designs by sending a demand letter to Bella on or about October 17, 2011. The letter informed defendants that Goldworks' designs were protected under several copyright registrations and included images of the Protected Designs. Mr. Griego demanded that defendants stop all manufacture, sale, and distribution of infringing works.

32. Eventually Mr. Griego and Mr. Amini sat down together on a park bench on the Plaza outside the Goldworks showroom after Mr. Amini received the October 2011 demand letter. Mr. Amini said he would stop selling infringing jewelry. Mr. Griego took Mr. Amini at his word.

33. But Mr. Amini and his various associates and companies broke this agreement and refused to respect Mr. Griego's intellectual property. If they ever stopped, at some point defendants began again to intentionally copy, market, and sell copies of plaintiff's RIVER OF LOVE® designs. Their infringement was clearly willful at this point, although it likely was from the beginning.

34. Mr. Griego discovered defendants' continuing infringement when he saw a magazine advertisement for Bella in *The Catalogues* that brazenly featured jewelry copying the Protected Designs. Further investigation revealed numerous pieces of jewelry sold by defendants in their stores on the Santa Fe Plaza, and on their website (www.bellafinejewelry.design) that are substantially similar to those in the River of Love® series. Defendants' infringing jewelry includes both rings and pendants copying plaintiffs' Protected Designs.

35. Defendants continue to willfully infringe the same Protected Designs that plaintiffs referenced in their 2011 demand letter. As of the date of this Amended Complaint—more than a year after this lawsuit was originally filed—Bella has continued to sell infringing designs on their website as shown in screenshots attached hereto as **Exhibit 9**.

36. Defendants have attempted to hide their infringement from Mr. Griego. When he has tried to confront defendants about their intellectual property theft and breaking their agreement to not copy his work, the staff at Bella have told Mr. Griego to leave the store.

37. On or about March 31, 2023, Mr. Griego sent a second demand letter to defendants. The letter was personally delivered to defendant Karimi at the Bella store. Defendants did not respond to Mr. Griego's second demand letter. Plaintiffs called Bella on April 7, 2023. Mr. Karimi answered the phone and said Bella had made minute changes to Mr. Griego's designs so that what they sold was different. When pressed that Bella's rings still used the obvious RIVER OF LOVE® design, Mr. Karimi said it was the fault of the person who made the rings that Bella sells. Mr. Karimi said Bella would engage lawyers to respond to the demand letter. Plaintiffs' counsel contacted the last lawyers known to have represented defendants, and those lawyers promptly denied representing defendants.

38. Contrary to Mr. Karimi's assurances, plaintiffs never received a response from any lawyer representing Bella. Neither Mr. Amini nor any agent of Bella or Amini Enterprise Inc. ever requested or received permission to copy, license, market, or sell plaintiffs' Protected Designs. Defendants' continued copying of Protected Designs threatens what Mr. Griego has accomplished over the past fifty years. Defendants' continuous and intentional infringement has unfairly eroded Goldworks' reputation for high quality, conveyed to the public that the RIVER OF LOVE® is not Mr. Griego's original design, and robbed plaintiffs of their legitimate market and reputation by

selling inferior knockoffs. Without judicial intervention, defendants' willful infringement will continue.

**Manic Enterprises, LLC**

39.     Manic Enterprises LLC's magazine, *The Catalogues,* features boutique jewelry, art, and clothing businesses across the Southwest. It has repeatedly run the following advertisement, publicly displaying Bella's infringing jewelry:



40.     In or about 2014, plaintiff wrote to defendants DeNapoli and Manic Enterprises LLC (the Manic Defendants), informing them of the Protected Designs, identifying the infringing images in Bella's advertisement, and demanding that defendants stop reproducing infringing copies of the Protected Designs. The Manic Defendants apologized and promised to stop.

41.     On or about April 26, 2023, plaintiffs again wrote to the Manic Defendants, reminding them of the same Protected Designs and similar infringement in *The Catalogues.* Plaintiffs told the Manic Defendants that if they simply stopped running infringing publications, plaintiffs would take the matter no further—but any further distribution of the advertisement would constitute willful infringement under the Copyright Act. The Manic Defendants went right on publishing infringing advertisements. Their

12

infringement is willful and highly damaging because it falsely communicates to the purchasing public that the Protected Designs belong to Bella and are not the original work of plaintiffs.

42. This action against all defendants is timely pursuant to the separate-accrual rule, under which "each infringing act starts a new statute of limitations period." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014).

## COUNT I
## Copyright Infringement
*against Bella Jewelry LLC, Amini Enterprise Inc., Frank Amini, Kevin Karimi, and Manic Enterprises LLC, dba The Catalogues*

43. Plaintiffs incorporate by reference all of the foregoing allegations.

44. Plaintiffs own registered copyrights in the Protected Designs.

45. Defendants had abundant access to the RIVER OF LOVE® designs, which Mr. Griego has sold since 1990 in Santa Fe, New Mexico.

46. Defendants copy, display, and distribute and sell to the public jewelry that is substantially similar to plaintiffs' Protected Designs.

47. Defendants were never authorized to copy the Protected Designs.

48. Defendants infringe plaintiffs' copyrights by reproducing substantial protected elements of the Protected Designs, both in actual jewelry and in images used for advertising the infringing jewelry, and displaying and distributing to the public this substantially similar jewelry.

49. Defendants also infringe by creating derivative works based on plaintiff's Protected Designs, and displaying and distributing such works to the public.

50. Defendants' infringement is ongoing and continuing.

51. Defendants have realized unlawful profits from the unauthorized reproduction, preparation of derivative works, display, and distribution to the public of works copying plaintiffs' Protected Designs.

52. Defendants' actions violate plaintiffs' exclusive rights under 17 U.S.C. § 106.

53. Defendants have had actual knowledge of plaintiffs' copyrights in the Protected Designs since receiving Mr. Griego's October 17, 2011, demand letter. Defendants' past and continuing infringement is willful.

54. Defendant Manic Enterprises LLC infringes plaintiffs' copyrights by reproducing, displaying, and distributing to the public substantial elements of the Protected Designs in images used for advertising. Manic Enterprises LLC's infringement is willful since it has been on actual notice of Plaintiff's copyrights in the Protected Designs since 2014 or before.

55. Each copied ring, pendant, or other derivative work, and each display of such work and distribution of such work to the public, as well as the threat of continuing infringement, constitutes a separate claim against defendants. Plaintiffs have sustained, and will continue to sustain, substantial damage from such infringement.

56. Defendants' conduct creates a threat of continuing infringement, unless permanently enjoined by Order of this Court. Plaintiffs have no adequate remedy at law.

**COUNT II**
**<u>Contributory Copyright Infringement</u>**
*against Frank Amini, Kevin Karimi, Amini Enterprise Inc., Amini Brothers, LLC,*
*and Cindy DeNapoli*

57. Plaintiffs incorporate by reference all of the foregoing allegations.

58. Upon information and belief, defendants, and each of them, profited as a result of having knowingly induced, fostered, caused, materially contributed to, or participated in the reproduction, display, and distribution of plaintiffs' Protected Designs.

59. Upon information and belief, defendants are contributorily liable for the copyright infringement alleged herein because they had knowledge that plaintiffs' Protected Designs were being infringed, and materially contributed to the infringing activity by assisting in the

reproduction and preparation of derivative works based on of plaintiff's copyrighted designs, and the displaying and distributing of such infringing works to the public.

60. Upon information and belief, Frank Amini contributes to the infringing activity by directing, controlling, fostering, and causing all the infringing activities of Bella and Amini Enterprises, Inc. as an owner and corporate officer.

61. Upon information and belief, Kevin Karimi contributes to the infringing activity by supervising the production, display, distribution, and other infringing activity of Bella Fine Jewelry & Art at the Santa Fe Plaza.

62. Upon information and belief, defendant Amini Brothers, LLC, materially contributes to the infringing activity by providing commercial space on the Santa Fe Plaza to display and distribute infringing jewelry.

63. Upon information and belief Amini Enterprise, Inc., as Defendant Bella's alter ego, performs the same infringing activity Bella performs.

64. Upon information and belief, defendant Cindy DeNapoli is President of *The Catalogues* and controls its publication. Ms. DeNapoli is the sole member of Manic Enterprises LLC and has long been aware that the advertisements that she causes her company to run in *The Catalogues* included images infringing the Protected Designs, thus materially contributing to the infringement.

65. Due to defendants' acts of contributory infringement, plaintiffs have suffered and will continue to suffer substantial damages to their business in an amount to be established at trial.

66. Due to defendants' acts of contributory infringement, defendants, and each of them, have obtained direct and indirect profits they would not have realized but for their infringement of plaintiffs' protected designs.

67. Upon information and belief, defendants, and each of them, continue to profit from the reproduction, display, and distribution of substantially similar copies of plaintiffs' Protected Designs. Defendants' past and continuing copying of the Protected Designs constitutes willful, deliberate, and ongoing infringement of plaintiffs' copyrights, causing actual and continuing damage and irreparable harm to plaintiffs. Plaintiffs have no adequate remedy at law.

**COUNT III**
**Vicarious Copyright Infringement**
*against Frank Amini, Kevin Karimi, Amini Brothers, LLC,*
*and Cindy DeNapoli*

68. Plaintiffs incorporate by reference all of the foregoing allegations.

69. Upon information and belief, the above listed defendants, and each of them, had a direct and obvious financial interest in and profited as a result of having had the right and ability to supervise the infringing reproduction, display, and distribution of plaintiffs' Protected Designs. Consequently, the above listed defendants are vicariously liable for the copyright infringement alleged herein.

70. Upon information and belief, Frank Amini has the right and ability to supervise the infringing activities of Bella and Amini Enterprise Inc. as its manager. He directs and controls all their infringing activities. Mr. Amini has multiple obvious financial interests in defendants' continued distribution of unlawful copies of plaintiffs' copyrighted design as the owner of Bella and Amini Brothers, LLC. He is therefore vicariously liable for the copyright infringement alleged herein.

71. Upon information and belief, defendant Amini Brothers, LLC, is vicariously liable for the copyright infringement alleged herein because it owns the commercial space on the Santa Fe Plaza used by other defendants to display and distribute infringing jewelry. The financial benefit of this infringement flows back to Amini Brothers, LLC, as the landlord of Bella. And, as landlord,

Amini Brothers, LLC has the right and ability to permit or prevent infringing conduct in its building; Amini Brothers, LLC fails to prevent the illegal activity occurring on its property and instead profits off of it.

72. Upon information and belief, defendant Cindy DeNapoli is vicariously liable for the copyright infringement alleged herein; she is President of *The Catalogues* and controls and supervises its publication. As the sole member of Manic Enterprises LLC, Ms. DeNapoli has a direct financial interest in the infringing advertisements that her company runs in *The Catalogues*.

73. Due to defendants' acts of vicarious infringement, plaintiffs have suffered and will continue to suffer substantial damages to their business in an amount to be established at trial.

74. Due to defendants' acts of vicarious infringement, defendants, and each of them, have obtained direct and indirect profits they would not have realized but for their infringement of plaintiffs' Protected Designs.

75. Upon information and belief, defendants, and each of them, continue to profit from the reproduction, display, and distribution of substantially similar copies of plaintiffs' Protected Designs. Defendants' past and continuing copying of the Protected Designs constitutes willful, deliberate, and ongoing infringement of plaintiffs' copyrights, causing actual and continuing damage and irreparable harm to plaintiffs. Plaintiffs have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE plaintiffs pray for relief as follows:

A. That defendants, their directors, officers, agents, representatives, subsidiaries, and affiliates and all persons acting by, through, or in concert with any of them, be permanently enjoined from:

1) infringing or contributing to or participating in the infringement of plaintiffs' Protected Designs, or acting in concert with others to infringe plaintiffs' copyrighted designs in any way;

2) copying, duplicating, creating derivative works from, selling, marketing, or distributing in any manner any Protected Design;

B. That defendants be required to pay plaintiffs all damages sustained as a result of defendants' copyright infringement pursuant to 17 U.S.C. § 504;

C. That defendants be required to account for and disgorge to plaintiffs all gains, profits, and advantages derived from their copyright infringement pursuant to 17 U.S.C. § 504(b);

D. That defendants be required to pay plaintiffs statutory damages, which should be increased due to defendants' willful infringement pursuant to 17 U.S.C. § 504(c);

E. That defendants be required to pay plaintiffs' costs and reasonable attorneys' fees under 17 U.S.C. § 505;

F. That plaintiffs be granted such other relief as is just and equitable.

## JURY DEMAND

Plaintiffs demand a jury trial of all issues triable to a jury in this matter.

Respectfully submitted,

BARDACKE ALLISON MILLER LLP

By: */s/ Benjamin Allison*
Benjamin Allison
Billy Trabaudo
Rose Cowan
P.O. Box 1808
141 E. Palace Avenue
Santa Fe, NM 87504-1808
505-995-8000

ben@bardackeallison.com
billy@bardackeallison.com

*Counsel for Plaintiffs Santa Fe Goldworks, Inc. and David Griego*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing to be filed through the Court's CM/ECF system which caused all parties and counsel entitled to receive notice to be served electronically as more fully described on the Notice of Electronic Filing.

BARDACKE ALLISON MILLER LLP

By: */s/ Benjamin Allison*
Benjamin Allison